UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ARIELLA and DAVID HELLMAN, on their own behalf and as next friends of their child, E.H.; and JOSH HARRISON and MIRIAM SEGURA-HARRISON, on their own behalf and as next friends of their child, H.H.,

Plaintiffs,

v.

MASSACHUSETTS BOARD OF ELEMENTARY AND SECONDARY EDUCATION; KATHERINE CRAVEN, in her official capacity as Chair of the Board; MATT HILLS, in his official capacity as Vice-Chair of the Board; DR. ERICKA FISHER, in her official capacity as a member of the Board; ELA GARDINER, in her official capacity as a member of the Board; FARZANA MOHAMED, in her official capacity as a member of the Board; MICHAEL MORIARTY, in his official capacity as a member of the Board; DALIDA ROCHA, in her official capacity as a member of the Board; PAYMON ROUHANIFARD, in his official capacity as a member of the Board; MARY ANN STEWART, in her official capacity as a member of the Board; DR. PATRICK TUTWILER, in his official capacity as a member of the Board; DR. MARTIN WEST, in his official capacity as a member of the Board; RUSSELL D. JOHNSTON, in his official capacity as Acting Secretary of the Board and Commissioner of DESE, and MASSACHUSETTS DEPARTMENT OF ELEMENTARY AND SECONDARY EDUCATION,

Defendants.

CIVIL ACTION
No. 24-CV-11200-NMG

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

STATUTORY & REGULATORY BACKGROUND ................................................................ 2

FACTUAL ALLEGATIONS ................................................................................................... 5

ARGUMENT .......................................................................................................................... 7

    I.      The Claims Against the Board and DESE are Barred by the Eleventh Amendment. ... 7

    II.    The Claims Against the Remaining Defendants Must Be Dismissed
For Failure to State a Claim. ....................................................................................... 8

        A.  Plaintiffs Fail to State a Plausible Claim for Relief under the Substantive
Component of the Due Process Clause. ...................................................... 8

            1. Plaintiffs Fail to Plausibly Allege Interference with a Fundamental Right. ...... 10

            2. The Board's Regulation Is Rationally Related to a Legitimate
Government Interest. ...................................................................................... 14

        B.  Plaintiffs Fail to State a Plausible Claim for Relief Under the Equal
Protection Clause. .................................................................................... 15

            1. Plaintiffs Fail to Plausibly Allege a Similarly Situated Comparator. ............... 16

            2. Plaintiffs Do Not Plausibly Allege Differential Treatment was Intended to
Punish the Exercise of a Fundamental Right. .................................................. 17

            3.  The Regulation is Rationally Related to a Legitimate Government Interest. ... 18

        C.  Plaintiffs Fail to State a Plausible Claim for Relief Under the Privileges or
Immunities Clause. ................................................................................... 19

CONCLUSION ..................................................................................................... 20

**INTRODUCTION**

Plaintiffs have brought this action to challenge the constitutionality of a Massachusetts Board of Elementary and Secondary Education (the "Board") regulation, 603 Code Mass. Regs. ("C.M.R.") § 28.03(1)(e)(3), that authorizes the provision of special-education services to children whose parents choose to place them at a private school, but requires that such services, when state or locally funded, be provided to them at a public school or other public or neutral location. Plaintiffs claim that the regulation violates the Due Process, Equal Protection, and Privileges or Immunities Clauses of the Fourteenth Amendment.

Plaintiffs claim that the regulation violates their constitutional right to direct the education and upbringing of their children. While the Supreme Court has recognized this as a fundamental right, it has also clearly limited its scope, in the context of schooling, to protecting the freedom to choose a private, over public, education for one's children. States thus cannot mandate attendance at public schools or bar the operation of private or religious schools. But as the Supreme Court and the First Circuit have also recognized, this right in no way obligates states to fund or otherwise facilitate attendance at private schools. This means that Massachusetts is under no obligation, as a matter of federal constitutional law, to provide state or locally funded special-education services to students at the private schools where they are enrolled. While Massachusetts has chosen, as a matter of state law and policy, to provide comparable special-education services to students at private schools vis-à-vis public-school students, the Board has also conditioned such benefits on the modest requirement that school districts provide the services at public schools or other public or neutral sites, to comply with Massachusetts's state constitutional anti-aid amendment. The Board's regulation thus does not violate any federal constitutional right that has been recognized

by the Supreme Court or the First Circuit.  It is therefore subject only to rational-basis review, which it easily survives. Plaintiffs' complaint should accordingly be dismissed.

### STATUTORY & REGULATORY BACKGROUND

The federal Individuals with Disabilities Education Act ("IDEA") "offers States federal funds to assist in educating children with disabilities" on the condition that the recipient State creates a plan for providing special-education services that "compl[ies] with a number of statutory conditions." *Endrew F. ex rel. Joseph F. v. Douglas County Sch. Dist. RE-1*, 580 U.S. 386, 390 (2017). The plan must provide "a free appropriate public education ('FAPE') in the least restrictive environment possible" for any child in their jurisdiction who has a qualifying disability and is enrolled in public school. *Johnson v. Boston Pub. Schs.*, 906 F.3d 182, 185 (1st Cir. 2018) (internal quotation marks omitted); 20 U.S.C. § 1412(a)(10). Importantly, however, under the IDEA, private school students are "not entitled by law to the panoply of services available to disabled public school students under the rubric of free and appropriate public education (FAPE)." *Gary S. v. Manchester Sch. Dist.*, 374 F.3d 15, 17 (1st Cir. 2002) (rejecting substantive due process, equal protection, and free exercise challenge to IDEA's provision of lesser benefits to private school students). The IDEA does not guarantee private school students a FAPE or provide an individualized right to an equality of funds; rather, it directs that private schools receive, overall, a proportionate share of a State's IDEA funds. 20 U.S.C. § 1412(a)(10)(A).

As a recipient of IDEA funds, Massachusetts maintains a plan for the provision of special-education services and makes annual assurances to the federal government that it complies with IDEA requirements. But Massachusetts's state law goes beyond the requirements of the IDEA, in that it provides all school-aged children with disabilities—including children whose parents enroll them in private schools—with an individual right to special-education services. Mass. G.L. c. 71B, § 3; *see also* 603 C.M.R. § 28.03(1)(e)(4) ("Special-education provided by the

school district to a private school student shall be *comparable* in quality, scope, and opportunity for participation to that provided to public school students with needs of equal importance." (emphasis added)).

Under Massachusetts state law, "the school committee of every city, town or school district" in the Commonwealth must "identify the school age children residing therein who have a disability." Mass. G.L. c. 71B, § 3. Once a student has been identified as having a disability, the local school committee must "diagnose and evaluate" the child's special needs and prepare an Individualized Education Program ("IEP") for them. G.L. c. 71B, § 3; *see* 603 C.M.R. § 28.02. "An IEP must be custom-tailored to suit a particular child and must be reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Johnson*, 906 F.3d at 185 (internal quotations omitted).[1] This standard ensures an "adequate and appropriate education," for all children in need of special-education services but does not "promise perfect[ion]," *Lenn v. Portland Sch. Comm.*, 998 F.2d 1083, 1086 (1st Cir. 1993), or even "an optimal or an ideal level of educational benefit," *Lessard v. Wilton-Lyndeborough Coop. Sch. Dist.*, 518 F.3d 18, 23 (1st Cir. 2008); *see also Endrew F.*, 580 U.S. at 400-01.

While Massachusetts provides greater protections for private school students with disabilities than provided for under the IDEA, it is also subject to a provision of the state constitution that restricts the use of public funds to support private schools. The relevant portion

---

[1] Massachusetts law applies the same standard as the IDEA. Mass. G.L. c. 71B, § 2. While Massachusetts once required that special-education services be reasonably calculated to assure the child's maximum possible development—a more generous standard than what is provided under federal law—the Massachusetts Legislature amended the statute so it conformed to the federal standard, replacing "maximum possible development" with a "free appropriate public education" as is found in the IDEA. *See E.T. ex rel. Doe v. Bureau of Special Educ. Appeals of the Div. of Admin. L. Appeals*, 91 F. Supp. 3d 38, 45 n.1 (D. Mass. 2015). Plaintiffs' allegation that Massachusetts is more generous in this regard, Compl. ¶ 38, is therefore incorrect.

of the state constitution, known as the "Anti-Aid Amendment," provides that "[n]o grant, appropriation or use of public money … shall be made or authorized by the commonwealth or any political subdivision thereof for the purpose of founding, maintaining or aiding any … primary or secondary school … which is not publicly owned." Mass. Const. art. 18, § 2.

Pursuant to Chapter 71B, and to comply with the Anti-Aid Amendment, the Board promulgated a regulation governing the provision of publicly funded special-education services to children whose parents have enrolled them in private school (the "Regulation"). The Regulation states that "school district[s] shall provide to such students genuine opportunities to participate in the public school special-education program consistent with state constitutional limitations." 603 C.M.R. § 28.03(1)(e)(1). And for such private school students, the Regulation requires that school districts "ensure that special-education services funded with state or local funds are provided in a public-school facility or other public or neutral site. When services are provided using only federal funds, services may be provided on private school grounds." *Id.* § 28.03(1)(e)(3).

The Regulation, however, applies only to children whose parents have voluntarily enrolled them in private school. For children with particularly complex special-education needs, a school district may determine that it cannot itself provide the degree of services necessary for a free appropriate public education. *Doucette v. Georgetown Pub. Schs.,* 936 F.3d 16, 29 (1st Cir. 2019). Under these circumstances, the school committee may pay for "private placement" at a school that specializes in serving students with special-education needs to ensure a FAPE for all public-school students. *C.G. ex rel. A.S. v. Five Town Cmty. Sch. Dist.*, 513 F.3d 279, 284-85 (1st Cir. 2008); *see Doucette,* 936 F.3d at 29 ("Indeed, the right to a school placement outside of the normal public-school system when an appropriate education is not otherwise possible arises from the IDEA's guarantee of a FAPE."). Massachusetts law therefore allows school committees to "enter

into an agreement with any public or private school, agency, or institution" to enroll a student in a specialized program for the purpose of providing the services required under the IEP.[2] Mass. G.L. c. 71B, § 4; *see also id.* § 10 (locality may "refer children requiring special-education to any institution within or without the commonwealth which offers curriculum, instruction and facilities which are appropriate to the child's disability").[3] When enrolled in private school under these circumstances, the child is considered a "publicly funded student[]" under the IDEA, 603 C.M.R. § 28.06, which entitles him to "all the rights the child[] would have if served by … [the State educational] agenc[y]." 20 U.S.C. § 1412(a)(10)(B).

## FACTUAL ALLEGATIONS

Plaintiffs Ariella and David Hellman are the parents of E.H., a school-aged boy who attends Maimonides School, a private Jewish elementary school in Brookline, Massachusetts. Compl. ¶¶ 46, 50. E.H. has ADHD and is eligible for free special-education services through the Public Schools of Brookline ("PSB"). *Id.* ¶¶ 47-48. Ariella and David have pursued these services, including by obtaining an IEP from BPS. *Id.* ¶ 48. In the IEP, PSB recommends that E.H. receive two hours of academic support and thirty minutes each of counseling and learning center time per week. *Id.* ¶¶ 48-49. Consistent with the Board's Regulations, PSB would provide these services to E.H. for free at "a neutral or public location." *Id.* ¶ 52. But because the Hellmans consider

---

[2] In requiring students to be educated in the "least restrictive" environment, "[t]he IDEA … articulates a preference for mainstreaming," that is, educating students who receive special-education services with students who are not disabled as much as possible. *Lenn,* 998 F.2d at 1086 (citing 20 U.S.C. § 1412(5) (requiring states to educate disabled and non-disabled children together "to the maximum extent appropriate")). "Translated into practical application, this preference signifies that a student 'who would make educational progress in a day program' is not entitled to a residential placement even if the latter 'would more nearly enable the child to reach his or her full potential.'" *Id.* (quoting *Abrahamson v. Hershman,* 701 F.2d 223, 227 (1st Cir. 1983)).

[3] The Massachusetts Supreme Judicial Court has held that this arrangement does not violate the Anti-Aid Amendment because it "does not, in any way, support the on-going maintenance of private schools by lessening the financial burden of those who have elected a private school education." *Commonwealth v. School Comm. of Springfield*, 382 Mass. 665, 683 (1981).

transporting E.H. off the Maimonides campus several times per week "unduly burdensome, disruptive, stigmatizing, stressful, inefficient," and a "detract[ion] from the education at … religious school,"[4] they have "decided to forgo the services financed with state and local funds." *Id.* ¶¶ 56, 63.[5]

Plaintiffs Josh Harrison and Miriam Segura-Harrison are the parents of H.H., a school-aged boy who attends Shaloh House, a private Jewish elementary school in Brighton, Massachusetts. *Id.* ¶ 64. H.H. has ADHD, a developmental coordination disorder, and dyslexia, all of which impact his ability to function in a classroom. *Id.* ¶ 66. H.H. is eligible for free special-education services through the Boston Public Schools ("BPS"). *Id.* ¶¶ 65-66. The Harrisons have pursued these services and have obtained an IEP from BPS. *Id.* ¶¶ 65-67. The IEP states that H.H. requires four hours of "self-regulation instruction" along with nearly two hours each of reading instruction, occupational therapy, and psychological services per week. *Id.* ¶ 67. Consistent with the Regulation, BPS will provide these services for H.H. at a neutral or public location. *See id.* ¶ 70. Because the Harrisons, like the Hellmans, consider transporting H.H. to and from a public or neutral location for these free services to be "impracticable, unduly burdensome, disruptive, stigmatizing, stressful, inefficient, and counterproductive" as well as an interruption to H.H.'s

---

[4] Plaintiffs also complain of the "significant expenses" of transporting E.H. between the school and the public or neutral facility, or alternatively of obtaining those services for E.H. at Maimonides. *Id.* ¶¶ 57-58.

[5] This Court may take judicial notice, on a motion to dismiss, of the fact that there are several public facilities nearby the Maimonides School, including the Lincoln School, a public elementary school (0.4 miles away), https://maps.app.goo.gl/9UzygyxPxcrpP74KA (accessed July 29, 2024); Brookline High School (0.9 miles away), https://maps.app.goo.gl/ohCGMcajXs9UND3AA (accessed July 29, 2024); and the Brookline Village branch of the Brookline Public Library (1.1 miles away), https://maps.app.goo.gl/vUsAdNDxscqFoXon6 (accessed July 29, 2024). *See Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (on review of a motion to dismiss, the court may consider "matters of public record, and facts susceptible to judicial notice").

Jewish education, the Harrisons have "decided to forgo the services financed with state and local funds." *Id.* ¶ 78.[6]

Although neither family has chosen to avail themselves of the full slate of state or locally funded special-education services that their respective districts have agreed to provide, the children are not going without the services they need. According to the complaint, E.H. and H.H. both receive some of the special-education services identified in their IEPs on campus at no cost through Gateways, "a nonprofit organization that provides services to students in the Jewish community" funded through a combination of federal [IDEA] funds distributed in accordance with the IDEA's proportionate share framework and private donations. *Id.* ¶ 60. And, of course, notwithstanding the allegations in the complaint, nothing has stopped Plaintiffs from choosing to send their children to private schools. *See generally id.* ¶¶ 46, 50-51, 62-63, 68, 77-78.

## ARGUMENT

**I.     The Claims Against the Board and DESE are Barred by the Eleventh Amendment.**

As a preliminary matter, the Court must dismiss Plaintiffs' claims against the Board and the Department of Elementary and Secondary Education ("DESE") based on the Eleventh Amendment. "The Supreme Court has clearly stated that the Eleventh Amendment bars federal suits by citizens against the state *or state agencies* and that this 'jurisdictional bar applies regardless of the nature of the relief sought.'" *O'Neill v. Baker*, 210 F.3d 41, 47 (1st Cir. 2000) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)) (emphasis added) (dismissing claims for injunctive and monetary relief against Massachusetts state agency); *accord*

---

[6] This Court may take judicial notice of the fact that there are several public facilities nearby Shaloh House, including the Brighton branch of the Boston Public Library (325 feet away), *see* https://maps.app.goo.gl/GKUufkCgoeEPSf8n6 (accessed July 29, 2024); and Brighton High School (0.5 miles away), https://maps.app.goo.gl/vu1yjDScXtmN94Ab6 (accessed July 29, 2024).

*Brait Builders Corp. v. Massachusetts Div. of Capital Asset Mgmt.*, 644 F.3d 5, 11 (1st Cir. 2011). Because the agency Defendants have not waived their Eleventh Amendment immunity in this case, and their immunity has not been abrogated by Congress, the claims against the Board and DESE must be dismissed. *See Brait Builders*, 644 F.3d 5, 11 (where state agency had not waived its immunity and immunity had not been abrogated by Congress, it was "perfectly clear" that plaintiff's claims against agency were barred by the Eleventh Amendment).

## II.     The Claims Against the Remaining Defendants Must Be Dismissed for Failure to State a Claim.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (1955)). Such allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see Ashcroft*, 556 U.S. at 677-78. In conducting its analysis, this Court must disregard "statements in the complaint that merely offer legal conclusions couched as fact." *Lemelson v. U.S. Bank Nat'l Ass'n*, 721 F.3d 18, 21 (1st Cir. 2013); *see also Mulero-Carrillo v. Román-Hernández*, 790 F.3d 99, 105 (1st Cir. 2015) ("Plaintiffs will survive a Rule 12(b)(6) motion to dismiss their federal constitutional claims . . . in [a] § 1983 action only if their pleadings plausibly establish that [defendants] violated their federal constitutional rights.").

### A.     Plaintiffs Fail to State a Plausible Claim for Relief Under the Substantive Component of the Due Process Clause.

Plaintiffs first claim that the Regulation violates the substantive component of the Due Process Clause of the Fourteenth Amendment because, in their view, it interferes with their right to direct the education and upbringing of their children. This claim fails because, while the Supreme Court has recognized a fundamental right to choose private over public school, neither that Court nor the First Circuit have ever recognized a fundamental right to receive

8

special-education services at the state's expense, let alone at the location of one's choosing. Because the Regulation does not violate a fundamental right that has ever been recognized by a court, it is subject only to rational-basis review, which it easily survives.

To state a substantive due process claim, a plaintiff must allege both that (1) the challenged government action has substantially interfered with a fundamental right or protected liberty interest and (2) that the interference was not constitutionally justified. *Washington v. Glucksberg*, 521 U.S. 702, 722-23 (1997); *Rivera v. Rhode Island*, 402 F.3d 27, 33-34 (1st Cir. 2005). Here, Plaintiffs substantive due process claim fails on both prongs. *Rivera*, 402 F.3d at 33 (at the motion to dismiss phase, substantive due process claims "must be carefully scrutinized to determine if the alleged facts support the conclusion that the state has violated an individual's constitutional rights").[7]

---

[7] Plaintiffs may also be required to allege that the government's conduct "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Legislative action that implicates a fundamental right is constitutionally cognizable "unless the infringement is narrowly tailored to serve a compelling state interest." *Glucksberg*, 521 U.S. at 721. Executive action that implicates a fundamental right, however, only "sinks to a level cognizable under the Due Process Clause [] when it is so extreme and egregious as to shock the contemporary conscience." *DePoutot v. Raffaelly*, 424 F.3d 112, 118 (1st Cir. 2005). This is an extremely deferential form of review only satisfied by "conduct [that was] intended to injure in some way unjustifiable by any government interest." *Id.* (quoting *Lewis*, 523 U.S. at 849).

Whether an agency regulation like the one at issue here is properly construed as executive or legislative in nature has not been addressed by the First Circuit. However, several cases suggest that, until it does, this Court may be bound by the Circuit's broad precedent stating that "the shocks-the-conscience test … governs *all* substantive due process claims based on executive, as opposed to legislative, action" and declaring that "[t]he conscience-shocking test is now an essential part of any substantive due process claim against a government actor." *Martinez v. Cui*, 608 F.3d 54, 64-65 (1st Cir. 2010) (emphasis in original); *Mongeau v. City of Marlborough*, 492 F.3d 14, 19 (1st Cir. 2007) (rejecting argument that applying the "shocks the conscience" standard should not apply to substantive due process claims challenging the constitutionality of deliberate decisions, and declaring that "[i]n order to state a substantive due process claim of any ilk, a plaintiff must allege behavior on the part of the defendant that is so outrageous that it shocks the conscience."). Accordingly, to the extent this Court concludes Plaintiffs must allege conscience-shocking behavior, they clearly fail to satisfy this exacting standard.

###### 1.    Plaintiffs Fail to Plausibly Allege Interference with a Fundamental Right.

First, Plaintiffs have not plausibly alleged government interference with a fundamental right or liberty interest, an essential element of the claim. *See Glucksberg*, 521 U.S. at 720 (the substantive component of the due process clause "provides heightened protection against government interference with certain fundamental rights and liberty interests"). While Plaintiffs do have a fundamental right to direct the education and upbringing of their children, the Regulation does not deprive them of that right as it has been recognized by the Supreme Court and the First Circuit. *See id.* at 521 ("[W]e have required in substantive-due-process cases a 'careful description' of the asserted fundamental liberty interest."). Indeed, Plaintiffs concede that they have "exercise[ed] their constitutional right to direct the upbringing and education of their child[ren] by enrolling [them] in private school." Compl. ¶¶ 46, 64.

Rather, Plaintiffs allege that the Regulation violates substantive due process by "making access to [state and locally funded special-education] services difficult or impossible for children whose parents enroll them in private schools." Compl. ¶ 88. But Plaintiffs have no federal constitutional right to state-funded special-educational benefits, much less to receive such benefits on-site at their private schools. *See Glucksberg*, 521 U.S. at 720-21 (to be fundamental an asserted right must be "objectively, deeply rooted in this Nation's history and tradition," and "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed"). Indeed, Plaintiffs' argument is squarely foreclosed by existing Supreme Court and First Circuit precedent.

Although the fundamental right to direct the education of one's children protects parents' freedom to choose a private over a public education, *see Pierce v. Society of Sisters*, 268 U.S. 510, 534-35 (1925); *Wisconsin v. Yoder*, 406 U.S. 205, 213 (1972), it does not guarantee a frictionless

choice. In fact, unless state action directly interferes with the existence of the choice itself, the right is not implicated at all. As the Supreme Court has stated, "[i]t is one thing to say that a State may not prohibit the maintenance of private schools and quite another to say that such schools must, as a matter of equal protection, receive state aid," even where there is a statutory right to that aid. *Norwood v. Harrison*, 413 U.S. 455, 462 (1973). Both the Supreme Court and First Circuit have consistently held that States are under no constitutional obligation to subsidize or otherwise facilitate parents in the exercise of this choice by, for example, providing public tuition grants for parochial schools. *Strout v. Albanese,* 178 F.3d 57, 66 (1st Cir. 1999) (statute providing tuition assistance grants to non-sectarian but not sectarian schools did not implicate parent's right to direct child's education where the absence "does not prevent the parents from doing what they wish; it only prevents the state from helping pay for their wishes"). Nor are States required to guarantee access to public educational benefits to private-school students. *Norwood*, 413 U.S. at 462 (state providing free textbooks to all students except those whose parents have chosen to send them to segregated private schools does not implicate parental right to direct education of children, even where students have statutory right to free textbooks); *Gary S.*, 374 F.3d at 20-21 ("[I]t is clear there is no federal constitutional requirement that private schools be permitted to share with public schools in state largesse on an equal basis.").

Indeed, this Court need look no further than the First Circuit's decision in *Gary S.* to conclude that Plaintiffs' substantive due process claim fails as a matter of law. 374 F.3d at 20-23. In that case, the court considered substantive due process and equal protection challenges to provisions of the IDEA that guarantee students enrolled in public school a greater degree of special-education services, and more funds for those services, compared to students who are voluntarily enrolled in private school. *Id.* The court rejected those challenges, holding that

11

providing greater public educational benefits to children enrolled in public school than to those enrolled in private school "does not significantly interfere with [parents'] fundamental right to direct the upbringing and education of children under their control." *Id.* at 22. This was so because "it is clear there is no federal constitutional requirement that private schools be permitted to share with public schools in state largesse on an equal basis," nor any requirement that students enrolled in those private schools have full access to public educational benefits available to public school students. *Id.* at 20-23. The First Circuit further observed that "[b]oth the Supreme Court and the First Circuit have consistently refused to invalidate laws which condition a parent's ability to obtain educational benefits on the parent's relinquishment of her right to send her child to private school." *Id.* at 23 (internal quotations and citations omitted).

In reaching this conclusion, the court noted that "the federal government [under the IDEA] does no more than state and local governments do every day by funding public school programs while providing lesser or, more likely, no funding to private schools, religious and otherwise." *Id.* at 20-21. It reasoned that "[p]ersons opting to attend private schools, religious or otherwise, must accept the disadvantages as well as any benefits offered by those schools [and] … cannot insist, as a matter of constitutional right, that the disadvantages be cured by the provision of public funding." *Id.* at 20. The court further explained that Congress's provision of lesser services to private-school students "leaves all parents with ultimate recourse to the public schools whenever the balance of services associated with attendance at a private school appears to them to be unsatisfactory; but the option thus available can necessitate their having to choose, as here, between alternatives each of which may seem imperfect." *Id.* at 21.

Here, Plaintiffs raise nearly identical legal claims to those in *Gary S.* Like the *Gary S.* plaintiffs, they argue that "the difference in treatment of their disabled son[s], who [are] attending

12

a religious school, from other disabled students, who are attending public schools, violates the …

Due Process and Equal Protection clauses of the federal constitution." *Id.* at 17. The only difference

is that in this case, Massachusetts has chosen—as a matter of *state law*—to provide a comparable

level of special-education services to private-school students vis-à-vis public school students,

while conditioning the provision of services to private-school students on the requirements that

such services be provided at a public school or other public or neutral site consistent with the Anti-

Aid Amendment. But the fact that Massachusetts has chosen to be more "generous" as a matter of

state policy, *see* Compl. ¶¶ 38, 40, has no bearing on Plaintiffs' federal constitutional claims.

"Although state and federal statutes may expand upon constitutional protections by creating new

statutory rights, statutes do not alter the protections afforded by the Constitution itself." *Parents*

*for Privacy v. Barr*, 949 F.3d 1210, 1232 (9th Cir. 2020); *see also PFZ Props., Inc. v.*

*Rodriguez*, 928 F.2d 28, 31-32 (1st Cir.1991) ("The doctrine of substantive due process does not

protect individuals from all [governmental] actions that infringe liberty or injure property in

violation of some law;" it prevents "governmental power from being used for purposes of

oppression," or "abuse of government power that shocks the conscience," or "action that is legally

irrational in that it is not sufficiently keyed to any legitimate state interests"); *St. Joan Antida High*

*Sch. Inc. v. Milwaukee Pub. Sch. Dist.*, 919 F.3d 1003, 1009 (7th Cir. 2019) ("State-specific

policies do not augment fundamental rights."). Plaintiffs thus do not have a fundamental right to

state-funded special-education services, let alone the receipt of those services on private school

grounds. *Hooks v. Clark County Sch. Dist.*, 228 F.3d 1036, 1042 (9th Cir. 2000) (policy "attaching

receipt of IDEA services to institutional school attendance" did not implicate fundamental right,

where "even if the parents have a constitutional right to educate [children outside the public school

system], they do not have a constitutional right to state-funded [special-education] services").

13

Plaintiffs therefore fail to allege that their claims implicate a "fundamental right" ever recognized by the Supreme Court or the First Circuit.

### 2. The Board's Regulation Is Rationally Related to a Legitimate Government Interest.

Because Plaintiffs have not plausibly alleged that the Regulation infringes on a fundamental right, rational-basis review applies. Under this forgiving standard, a "statute is presumed constitutional, and [t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record." *Heller v. Doe by Doe*, 509 U.S. 312, 320-21 (citations and internal quotation marks omitted); *Gonzalez-Droz v. Gonzalez-Colón*, 660 F.3d 1, 9-10 (1st Cir. 2011) (applying same standard to review of regulation).

Here, Plaintiffs not only fail to make any plausible allegation negating the rationality of the regulatory scheme, but also themselves identify a rational basis for the Regulation, acknowledging that it was promulgated to comply with the Anti-Aid Amendment. Compl. ¶ 43.[8] *See Mulero-Carrillo v. Román-Hernández*, 790 F.3d 99, 107-08 (1st Cir. 2015) (affirming dismissal of substantive due process claim on motion to dismiss where Plaintiff's pleading failed to negate rational justifications for government action). The Regulation strikes a balance, effecting the State Legislature's policy judgment to provide special-education services to children in private school that are comparable to those provided to public school students, while simultaneously complying with the state constitutional Anti-Aid amendment.

---

[8] The adoption of the Anti-Aid Amendment served several legitimate purposes. *See Commonwealth v. School Comm. of Springfield*, 382 Mass. 665, 673 (1981). "[O]ne important purpose of art. 46 was to tighten the prohibition of public support for religious education" where "[p]roponents of such an amendment urged that liberty of conscience was infringed whenever a citizen was taxed to support the religious institutions of others." *Id.* (cleaned up). "A secondary purpose was to protect State and municipal treasuries from the growing pressure of interest groups in search of private appropriations." *Id.*

Accordingly, Plaintiffs substantive due process claim fails as a matter of law and should be dismissed with prejudice.

### B.       Plaintiffs Fail to State a Plausible Claim for Relief Under the Equal Protection Clause

Plaintiffs have likewise failed to state an equal protection claim because they have not plausibly alleged that children whose parents enroll them in private school are treated differently from similarly situated children, nor have they plausibly alleged that the Regulation was promulgated with intent to punish parents who exercise their fundamental right to educate their children at a private school.

The Equal Protection Clause of the Fourteenth Amendment "prohibits a state from treating similarly situated persons differently because of their classification in a particular group" or because of their exercise of a fundamental right. *Mulero–Carrillo*, 790 F.3d at 105–06. "Generally, for an equal protection claim to survive a motion to dismiss, a plaintiff must allege facts plausibly demonstrating that compared with others similarly situated, [they were] selectively treated … based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Id.* at 106 (internal quotation marks omitted*)*; *Mills v. State of Me.*, 118 F.3d 37, 46 (1st Cir. 1997) ("classifications aimed at 'suspect' classes or those aimed at 'fundamental' interests must pass strict scrutiny").[9] Absent that, the classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis" for it. *Heller*, 509 U.S. at

---

[9] Plaintiffs do not claim that they are part of a suspect class. Instead, they claim that they were discriminated against in their exercise of a fundamental right, *i.e.*, their right to direct the upbringing of their children. *See generally* Compl. For the same reasons that their claim fails to satisfy the requirements of a substantive due process claim, it fails to plausibly narrate a claim for violation of the Equal Protection Clause, because they have not identified a fundamental right that has been recognized by the Supreme Court or the First Circuit.

320. Here, Plaintiffs allege discrimination based on the exercise of a fundamental right where they assert that the Regulation singles out the minor plaintiffs for disfavored treatment as punishment for their parents' decisions to enroll them in private school. Compl. ¶ 41.

The complaint, however, fails to plausibly allege at least two essential elements of an equal protection claim, thereby requiring its dismissal.

### 1. Plaintiffs Fail to Plausibly Allege a Similarly Situated Comparator.

Plaintiffs fail to plausibly suggest that the claimed comparators—children enrolled in public school and children enrolled in private school by their school committee—are similarly situated to the minor plaintiffs. The complaint alleges that the minor plaintiffs "whose *parents* enroll them in private schools" have less access to special-education services as compared to "children in public schools" and "children who have been enrolled in a private school by their school committee." Compl. ¶ 41. It is devoid of any other factual allegations that describe how the minor plaintiffs are similar to the asserted comparators. Plaintiffs have therefore failed to "plead [the] indicia of being similarly situated" necessary to sustain an equal protection claim, and dismissal is warranted on that ground alone. *Mulero-Carrillo*, 790 F.3d at 106.

But even if Plaintiffs could rectify this pleading deficiency, the asserted comparators are not—as a matter of law—similarly situated such that differential treatment would give rise to an equal protection violation. This is so for several reasons. First, as already noted, there is no constitutional requirement that states treat students who have been parentally placed in private schools the same as students enrolled in public school when it comes to the availability of public educational benefits and allocation of funds. Therefore, claiming that public school students are comparable here is an "apples-to-oranges comparison" that as a matter of law "does not pass Rule 12(b)(6) muster." *Id.*; *see Maher v. Roe,* 432 U.S. 464, 477 (1977) ("*Pierce* casts no shadow over

16

a State's power to favor public education by funding it . . . ."); *Gary S.*, 374 F.3d at 21; *St. Joan Antida High Sch*, 919 F.3d at 1009 (holding that the right to send one's child to private school does not "protect against a state favoring public schools with public dollars.").

Likewise, students who are placed in specialized private schools by a school committee are not, as a matter of law, similarly situated to students who are parentally placed in private school. School committees may only place public school students in private schools if they conclude that the school district cannot, due to the complexity of the child's needs, adequately support them with its existing resources and infrastructure. *See* pages 4-5, above. Under these circumstances, the school committee will remove a child from a public-school setting and enroll him in a specialized private-school program because it is necessary to satisfy the state's obligation to provide that child with a FAPE. *Doucette*, 936 F.3d at 29 ("[R]ight to a school placement outside of the normal public school system when an appropriate education is not otherwise possible arises from the IDEA's guarantee of a FAPE."). Indeed, when a school committee places a student in a specialized private school, the specialized private school—instead of the school district—provides the student with special-education services. Accordingly, by referring to students who have extremely complex special-education needs and who are enrolled by their school committees in private programs for the purpose of obtaining the special-education services that the district is unable to provide, Plaintiffs are once again making "an apples-to-oranges comparison," that "does not pass 12(b)(6) muster." *Mulero-Carrillo*, 790 F.3d at 106.

      **2.**      **Plaintiffs Do Not Plausibly Allege Differential Treatment was Intended to Punish the Exercise of a Fundamental Right.**

Even if Plaintiffs had plausibly alleged a similarly situated comparator, Plaintiffs cannot succeed on their equal protection claim where they fail to allege facts that plausibly suggest that the Board promulgated the Regulation with the "intent to inhibit or punish" parents for exercising

17

their fundamental right to choose a private education for their children. *Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp.*, 246 F.3d 1, 7 (1st Cir. 2001). To the contrary, Plaintiffs allege that the Regulation at issue was designed to comply with the Massachusetts Anti-Aid Amendment.  Compl. ¶ 43. Where Plaintiffs allege a neutral reason for the alleged discrimination and fail to allege facts that plausibly suggest the Regulation was motivated by an intent to punish, Plaintiffs have failed to allege an essential element of their equal protection claim.

### 3.  The Regulation is Rationally Related to a Legitimate Government Interest.

Because Plaintiffs have not plausibly alleged discrimination based on the exercise of a fundamental right, the Regulation is subject to rational-basis review. As already noted, under this forgiving standard, "a classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller*, 509 U.S. at 320 (citations omitted). Here, as with Plaintiffs' substantive due process challenge, the Regulation serves the legitimate purpose of ensuring compliance with the Anti-Aid Amendment of the Massachusetts Constitution. Plaintiffs have acknowledged this purpose in their complaint. Compl. ¶ 43. Moreover, "the distinctions made here between students in public school as opposed to children who are unilaterally placed in private schools are rational" because the state, like the federal government in *Gary S.*, "chose not to subject local educational authorities to the even greater and perhaps overwhelming responsibility of providing" special-education services to private-school students in an identical fashion to public school students. 374 F.3d at 23.

Under rational-basis review, "the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record," *Heller*, 509 U.S. at 320–21 (citations omitted). Plaintiffs have failed to make this showing in their complaint.

### C.      Plaintiffs Fail to State a Plausible Claim for Relief Under the Privileges or Immunities Clause.

Plaintiffs' claim under the Privileges or Immunities Clause of the Fourteenth Amendment must be dismissed because it is not legally cognizable, as even Plaintiffs recognize. Plaintiffs allege a violation of the Privileges or Immunities Clause "to the extent that the source of substantive protection for the right of parents to direct the upbringing of their children by enrolling them in a private school is the Privileges and Immunities Clause, rather than the Due Process Clause." Compl. ¶ 6. But longstanding Supreme Court precedent sharply limits the rights protected under the Privileges or Immunities Clause to those rights "which owe their existence to the federal government" rather than those "the State governments were created to establish and secure." *Slaughter-House Cases*, 83 U.S. 36, 76, 79 (1872); *see also Glucksberg*, 521 U.S. at 759 n.6 (O'Connor, J., concurring) (reiterating that *Slaughter-House Cases* remain good law).

Courts have consistently refused to expand this doctrine to encompass other rights, including certain liberty interests. *McDonald v. City of Chicago*, 561 U.S. 742, 758 (2010) (rejecting claim that the Second Amendment right falls under the Privileges or Immunities Clause, where court has consistently "decline[d] to disturb the *Slaughter-House* holding" by expanding the privileges or immunities clause to include a broader range of rights).[10] Accordingly, where courts have consistently held that the Privileges or Immunities Clause does not protect

---

[10] For the same reasons stated here, Plaintiffs concede in their Complaint that this claim is likely barred. Compl. ¶ 108 n.2. Plaintiffs nevertheless bring the claim for the purpose of "preserv[ing] it for eventual review by the Court." *Id*.

unenumerated rights like those at issue here, Plaintiffs' Privileges or Immunities claim should be dismissed with prejudice.[11]

## CONCLUSION

For the foregoing reasons, the complaint should be dismissed, with prejudice.

Respectfully submitted,

MASSACHUSETTS BOARD OF ELEMENTARY AND SECONDARY EDUCATION; KATHERINE CRAVEN, in her official capacity as Chair of the Board; MATT HILLS, in his official capacity as Vice-Chair of the Board; DR. ERICKA FISHER, in her official capacity as a member of the Board; ELA GARDINER, in her official capacity as a member of the Board; FARZANA MOHAMED, in her official capacity as a member of the Board; MICHAEL MORIARTY, in his official capacity as a member of the Board; DALIDA ROCHA, in her official capacity as a member of the Board; PAYMON ROUHANIFARD, in his official capacity as a member of the Board; MARY ANN STEWART, in her official capacity as a member of the Board; DR. PATRICK TUTWILER, in his official capacity as a member of the Board; DR. MARTIN WEST, in his official capacity as a member of the Board; RUSSELL D. JOHNSTON, in his official capacity as Acting Secretary of the Board and Commissioner of DESE, and MASSACHUSETTS DEPARTMENT OF ELEMENTARY AND SECONDARY EDUCATION

---

[11] Plaintiffs challenge the constitutionality of the Regulation both on its face and as applied. Compl. ¶¶ 7, 88, 91, 102, 112. But where Plaintiffs have failed, as a matter of law, to plausibly allege that the Regulation is unconstitutional as applied to them, their facial challenge necessarily fails too. "A plaintiff can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the Act would be valid,' *i.e.,* that the law is unconstitutional in all of its applications." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449, 128 (2008) (quoting *United States v. Salerno,* 481 U.S. 739, 745 (1987)). Accordingly, Plaintiffs' facial challenge must be dismissed, where—as established herein—Plaintiffs' own situation presents a set of circumstances in which the application of the Regulation is constitutional. *See United States v. Rahimi*, 144 S. Ct. 1889, 1891 (2024) (dismissing facial challenge where statute "was found constitutional as applied to the facts of [plaintiff's] own case").

By their attorneys,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

/s/ *Timothy J. Casey*
Timothy J. Casey (BBO No. 650913)
Rebecca R. Krumholz (BBO No. 707379)
Assistant Attorneys General
Government Bureau
One Ashburton Place
Boston, MA 02108
(617) 727-7000
Timothy.Casey@mass.gov
Rebecca.Krumholz@mass.gov

July 30, 2024

## CERTIFICATE OF SERVICE

I hereby certify that, on July 30, 2024, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all registered participants identified on the Notice of Electronic Filing.

/s/ *Rebecca R. Krumholz*
Assistant Attorney General

21