United States District Court
District of Massachusetts

```
                                    )
ARIELLA HELLMAN, ET AL.             )
                                    )
            Plaintiffs,             )
                                    )     Civil Action No.
            v.                      )     24—11200-NMG
                                    )
DEPARTMENT OF ELEMENTARY AND        )
SECONDARY EDUCATION, ET AL.         )
                                    )
            Defendants.             )
                                    )
```

MEMORANDUM & ORDER

GORTON, J.

Plaintiffs in this case challenge the constitutionality of a state regulation governing the provision of special education services in Massachusetts. The regulation requires that publicly funded, special education services for students enrolled in private schools be provided "in a public-school facility or other public or neutral site." Thus, parents who have placed their children in private schools are responsible for transporting for their children off-site if they wish to take advantage of those free services. Plaintiffs allege that this regulation is unconstitutional because it deprives them of their right to direct the upbringing of their children.

Plaintiffs have brought suit against defendants Massachusetts Board of Elementary and Secondary Education ("the Board"), its individual members in their official capacities, the Department of Elementary and Secondary Education ("DESE") and its commissioner in his official capacity (collectively, "defendants") for their roles in promulgating and implementing the purported unconstitutional regulation.

Pending before the Court is defendants' motion to dismiss all counts for failure to state a claim under Fed. R. Civ. P. 12(b)(6) (Docket No. 13).

## I.    Background

### A. Statutory Backdrop

The Individuals with Disabilities Education Act ("IDEA") is a federal grant program to support states in providing special education services. 20 U.S.C. § 1412(a). Among other statutory prerequisites to receive funding, a participating state must create a plan for providing a "free appropriate public education ('FAPE') in the least restrictive environment possible" for any child in the state who has a qualifying disability. Johnson v. Boston Pub. Schs., 906 F.3d 182, 185 (1st Cir. 2018) (internal quotation marks omitted)(quoting 20 U.S.C. § 1412(a)(10)). These comprehensive plans, called Individualized Education Programs ("IEPs"), are tailored to each child's needs, in

-2-

consultation with the child's parents, teachers, and school officials. See Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1, 580 U.S. 386, 400 (2017) (internal quotation marks omitted).

The IDEA does not require identical treatment for disabled students in public schools and those placed voluntarily in private schools. The 1997 Amendments to the IDEA clarified that disabled children who have been voluntarily placed in private schools do not have "an individually enforceable right to receive special education and related services." Gary S. v. Manchester Sch. Dist., 241 F. Supp. 2d 111, 114 (D.N.H. 2003), aff'd 374 F.3d 15 (1st Cir. 2004). Rather, a school district is required only to spend a proportionate amount of its IDEA funding on special education services in private schools. Id. at 114-15.

IDEA specifies that only students who attend public schools are to receive this benefit; private school students are not entitled "the panoply of services available to disabled public school students under the rubric of [FAPE]." Gary S. v. Manchester Sch. Dist., 374 F.3d 15, 17 (1st Cir. 2002).

Massachusetts, like all state recipients of IDEA funds, must provide services to students at least as comprehensive as those outlined in IDEA. The state goes above and beyond its

-3-

federally-mandated obligations by guaranteeing to all children, regardless of whether they are enrolled in public or private school, an individual right to special education. M.G.L.c. 71B, § 3.

At the same time, Massachusetts is also subject to a provision of its state constitution which restricts the use of public funds to support private schools ("the Anti-Aid Amendment").  The provision reads, in relevant part,

> No grant, appropriation or use of public money . . . shall be made or authorized by the commonwealth or any political subdivision thereof for the purpose of founding, maintain or aiding any . . . primary or secondary school . . . which is not publicly owned.

Mass Const. art. 18, § 2.

To comport with its obligations under the Anti-Aid Amendment, the Board promulgated a regulation which, among other things, requires that school districts to ensure that publicly funded special education services "are provided in a public-school facility or other public or neutral site."  603 C.M.R. § 28.03(1)(e)(1).

### B. Facts

According to the complaint, plaintiffs Ariella and David Hellman ("the Hellmans") are the parents of E.H., a student who attends a private elementary school in Brookline, Massachusetts. E.H. has attention deficit hyperactivity disorder ("ADHD") and

-4-

is eligible for publicly-funded special education services
through the Public Schools of Brookline ("PSB").  The Hellmans
initially enrolled their son with PSB for preschool, where he
received special needs education pursuant to Massachusetts law.
Once the Hellmans transferred E.H. to a private school, they
were required to transport E.H. to a "public or neutral site" if
they wished to continue taking advantage of the free special
needs educational services.

Plaintiffs Josh Harrison and Miriam Segura-Harrison (the
"Harrisons") allege an almost identical set of facts.  Similar
to the Hellmans, they have a son with special needs.  They have
decided to send their son, H.H. to Shaloh House, a private
Jewish elementary school in Brighton.  Because H.H. attends a
private school, he is not able to receive the special needs
educational services to which he is entitled at his school.

Both the Hellmans and Harrisons (collectively,
"plaintiffs") claim that they have effectively been barred from
services to which they are entitled.  They assert that the
additional transportation requirements imposed by the state
would force them to leave work several times a day, several days
each week, to take their son to a place where such services are
available.  Moreover, the travel would be unduly disruptive and
burdensome for their children.  As such, plaintiffs contend,

-5-

they were faced with the choice of relinquishing either 1) their son's statutorily conferred right to special education services or 2) their fundamental right, protected by the U.S. Constitution, to enroll their child in private school. Faced with that choice, the parents have chosen to forego the free special education because it is impracticable, unduly burdensome, disruptive, stigmatizing, stressful, inefficient and counterproductive.

Plaintiffs receive some special needs education for their children through Gateway, a nonprofit student service group in the Jewish community, but Gateway does not provide as many services as plaintiffs are entitled to under Massachusetts law.

## C. Procedural History

Plaintiffs filed their three-count complaint in this Court in May, 2024. The complaint names the Massachusetts Department of Education and several individual city officials as defendants.

Count I alleges a violation of plaintiffs' rights under the Substantive Due Process Clause of the Fourteenth Amendment. Plaintiffs contend that the state limits the exercise of their fundamental right to direct the upbringing of their children.

Count II alleges a violation of the Equal Protection Clause of the Fourteenth Amendment because the state law discriminates

-6-

against parents who choose to exercise their fundamental
constitutional right to direct the upbringing of their children.

Count III alleges a violation of the Privileges or
Immunities Clause, raising the same substantive arguments as in
Count I but asserting that

> some Supreme Court justices have opined that this Clause,
> rather than (or in addition to) the Due Process Clause, is
> the source of protection for substantive rights – including
> unenumerated rights – against the states.

Defendants now move to dismiss all claims pursuant to Fed.
Rs. Civ. P. 12(b)(1) and (b)(6).  Plaintiffs assent to the
dismissal of their claims against the Board and the Department
on Eleventh Amendment grounds and therefore this Court will
dismiss those defendants from this action without further
analysis of the jurisdictional issues in the claims against
them.

## II.  **Motion to Dismiss**

### A. **Legal Standard**

To survive a motion to dismiss pursuant to Fed. R. Civ. P.
12(b)(6), the subject pleading must state a claim for relief
that is actionable as a matter of law and "plausible on its
face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell
Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is
facially plausible if, after accepting as true all non-

-7-

conclusory factual allegations, the "court [can] draw the
reasonable inference that the defendant is liable for the
misconduct alleged." Ocasio-Hernandez v. Fortuno-Burset, 640
F.3d 1, 12 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678). The
reviewing court "may not disregard properly pleaded factual
allegations even if actual proof of those facts is improbable."
Ocasio-Hernandez, 640 F.3d at 12.

When rendering that determination, a court may not look
beyond the facts alleged in the complaint, documents
incorporated by reference therein and facts susceptible to
judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st
Cir. 2011). A court also may not disregard properly pled
factual allegations even if "actual proof of those facts is
improbable." Ocasio-Hernandez, 640 F.3d at 12 (quoting Twombly,
550 U.S. at 556). Rather, the necessary "inquiry focuses on the
reasonableness of the inference of liability that the plaintiff
is asking the court to draw." Id. at 13. The assessment is
holistic:

> the complaint should be read as a whole, not parsed
> piece by piece to determine whether each allegation,
> in isolation, is plausible.

Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013)
(quoting Ocasio-Hernandez, 640 F.3d at 14).

-8-

## B. Application

### 1. Substantive Due Process

Count I alleges a violation of the Due Process Clause of the Fourteenth Amendment, in that the regulation unlawfully conditions receipt of a benefit on the non-exercise of a constitutional right.

A substantive due process claim requires plaintiffs to show that they were deprived of a protected life, liberty or property interest. Rivera v. Rhode Island, 402 F.3d 27, 33-36 (1st Cir. 2005). The kinds of liberty and property interests protected by substantive due process are "much narrower" than those protected under the procedural due process framework. Gonzalez-Fuentes v. Molina, 607 F.3d 864, 880 n.13 (1st Cir. 2010). Plaintiffs must specifically name "fundamental" rights and liberties which are "deeply rooted in this Nation's history and tradition," Washington v. Glucksberg, 521 U.S. 702, 720 (1997), or "implicit in the concept of ordered liberty." Palko v. Connecticut, 302 U.S. 319, 325 (1937).

The parties diverge substantially in their framing of the "fundamental right" of which plaintiffs are allegedly deprived.

Defendants do not dispute that the Supreme Court has expressly recognized the right of parents to send their children to private school, Pierce v. Soc'y of Sisters, 268 U.S. 510,

-9-

534-35 (1925), but they contend that the right asserted in the complaint goes much farther, encompassing a

> right to receive special education services at the state's expense . . . at the location of one's choosing.

Defendants argue that neither the Supreme Court nor the First Circuit has ever recognized such a right.

Plaintiffs insist that defendants' characterization of the fundamental right asserted is overly broad and that their children have a statutory right to state-funded special education services, pursuant to Massachusetts law. The constitutional violation arises, they say, from the fact that their children are being deprived of their statutory right by virtue of the parent-plaintiffs' exercise of their constitutional right, established in Pierce, to enroll their children in private school.

A decision of the United States District Court for the District of New Hampshire in Gary S. v. Manchester School District, affirmed by the First Circuit, is directly on point. There, as in this case, the court faced the question of whether the state's special education law violated plaintiff-parents' Fourteenth Amendment rights. The state law in question entitled parents who had enrolled their children in public school only to a hearing if the parents were dissatisfied with the services

-10-

rendered to their child, pursuant to IDEA. 241 F. Supp. 2d at
113.  Parents of children enrolled in private school brought
suit alleging that the state law impermissibly conditioned their
right to a hearing on relinquishing their right to send their
children to private school. Id. (cleaned up).

The district court concluded, and the First Circuit
affirmed, that the case fit "comfortably" within the
longstanding caselaw from the Supreme Court and First Circuit
which

> consistently refused to invalidate laws which condition a
> parent's ability to obtain educational benefits on the
> parent's relinquishment of her right to send her child to
> private school.

374 F.3d 15, 23 (2004) (citing Norwood v. Harrison, 413 U.S.
455, 462 (1973); Strout v. Albanese, 178 F.3d 57, 66 (1st Cir.
1999); Harris v. McRae, 448 U.S. 297, 318 (1980); Maher v. Roe,
432 U.S. 464, 477 (1977)).

This Court concludes that the case at bar is controlled by
that precedent.

Plaintiffs seek to distinguish the ruling in Gary S. by
asserting that it was contingent on the fact that private school
students in New Hampshire have no statutory entitlement to
special needs education services.  By contrast, plaintiffs
contend, all Massachusetts children are entitled by state

-11-

statute to receive special education services in the "least restrictive environment" under M.G.L.c. 71B, § 1.  Regulations promulgated by the School Board define the

> "least restrictive environment" [to mean] to the maximum
> extent appropriate [in their] regular education
> environment.

603 C.M.R. 28.02.

That distinction does not alter the substantive due process analysis.  The "equally available" benefits to which the First Circuit refers in Gary S., by comparison, are federally guaranteed unemployment benefits.  Plaintiff's framing of their claim removes it from the realm of federal substantive due process entirely because the right being deprived is one conferred by state statute, as opposed to a "fundamental right" protected by the U.S. Constitution. See St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist., 919 F.3d 1003, 1009 (7th Cir. 2019) ("State-specific policies do not augment fundamental rights.").  Plaintiffs' claim thus relates only to state law, i.e., whether the state regulation requiring private school students to receive publicly-funded special education services off-site denies plaintiffs' children (not the plaintiffs themselves) of their state statutory rights to receive special education services in the "least restrictive environment."

-12-

Furthermore, the state statute does not define the "least restrictive environment" in the way plaintiff claims, i.e., to require the provision of special education services on the premises of the school that the child attends. The Court replicates the entire provision for the sake of clarity:

> Least Restrictive Environment (LRE) shall mean the educational placement assures that, to the maximum extent appropriate, students with disabilities, including students in public or private institutions or other care facilities, are educated with students who are not disabled, and that special classes, separate school, or other removal of students with disabilities from the general education environment occurs only when the nature or severity of the student's disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

603 C.M.R. § 28.02(12) (emphasis added). The term "regular school environment" does not appear in the regulation. To the extent plaintiffs rely on the phrase "general school environment," it is clear that, when viewed in the full context of the provision, the phrase means only that students requiring special needs services ought to be integrated, to the maximum extent appropriate, with students not requiring those services.[1] The "general school environment" to which the regulation refers

---

[1] The federal statute, 20 U.S.C. § 1412, similarly states, "[D]isabled children should be educated with nondisabled children to the maximum extent appropriate," thus "embod[ying] a statutory preference for 'mainstreaming,' or the maximum possible integration of handicappd children with nonhandicapped children." Doe v. Brookline Sch. Comm., 722 F.2d 910 (1st Cir. 1983).

is not "the schools that [children] attend," as plaintiffs
assert.  As such, defendants do not deny "benefits equally
available to all" so long as they seek to ensure that private
school students, just like public school students, are
integrated into learning environments with nondisabled students
"to the maximum extent appropriate."

Therefore, any distinction between the fact pattern here
and that in Gary S. is without a difference.  There is no
fundamental right that the state law burdens.  At most, just as
in Gary S., plaintiffs allege no more than burdened access to
publicly-funded benefits.  The Court finds, consistent with
Supreme Court and First Circuit precedent, that plaintiffs fail
to state a violation of their substantive due process rights.

### 2. Equal Protection

To state a claim an equal protection violation, the
plaintiff must allege that

> compared to others, similarly situated, [he] was
> selectively treated . . . based on impermissible
> considerations such as race, religion, intent to inhibit or
> punish the exercise of constitutional rights, or malicious
> or bad faith intent to injure a person.

Marrero-Gutierrez v. Molina, 491 F.3d 1, 9 (1st Cir. 2007);
Rubinovitz v. Rogato, 60 F.3d 906, 909-10 (1st Cir. 1995).
Selective treatment aimed at fundamental interests must
withstand strict scrutiny.  Mills v. State of Maine, 118 F.3d

-14-

37, 46 (1st Cir. 1997).  Otherwise, the classification may stand
so long as "there is any reasonably conceivable state of facts
that could provide a rational basis." Heller, 509 U.S. at 320.

The same deficiency that doomed plaintiffs' substantive due
process claim undermines their equal protection claim: the
complaint does not demonstrate that the regulation restricts a
constitutionally protected fundamental right. See supra.
Plaintiffs do not demonstrate that the regulation was
"inten[ded] to inhibit or punish" parent-plaintiffs for
exercising a constitutionally protected fundamental right.
Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp.,
246 F.3d 1, 7 (1st Cir. 2001).

As such, the state law is subject to rational basis review,
wherein

> [the] statute is presumed constitutional, and [t]he burden
> is on the one attacking the legislative arrangement to
> negative every conceivable basis which might support it,
> whether or not the basis has a foundation in the record.

Heller v. Doe, 509 U.S. 312, 320-21 (1993) (citations and
internal quotation marks omitted).

Plaintiffs do not overcome their heavy burden.  It is
axiomatic that a state has a legitimate and neutral interest in
promoting compliance with its valid laws. See Lorillard Tobacco
Co. v. Reilly, 84 F. Supp. 2d 180, 186 (D. Mass. 2000), rev'd,

-15-

in part, on other grounds, <u>Consolidated Cigar Corp.</u> v. <u>Reilly</u>, 218 F.3d 30 (1st Cir. 2000); <u>New Motor Vehicle Bd. of Cal.</u> v. <u>Orrin W. Fox Co.</u>, 434 U.S. 1345, 1351 (1977) (finding that the state has an interest in ensuring its legitimate laws are followed). Defendants aver that the challenged regulation was promulgated for the purpose of complying with the Anti-Aid Amendment and this Court finds that is a legitimate interest to survive rational basis review.

### 3. Privileges or Immunities

Finally, plaintiffs assert the same substantive arguments but lodge them instead under the auspices of the Privileges or Immunities Clause of the Fourteenth Amendment. That clause provides,

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States.

U.S. Cons. amend. XIV.

Defendants cite "longstanding Supreme Court precedent" starting with the <u>Slaughter-House</u> Cases, 83 U.S. 36 (1872), which refuse to expand the rights protected under the Privileges or Immunities clause to unenumerated rights guaranteed by the states.

Plaintiffs make no attempt to resuscitate their claim, conceding that it "may be foreclosed under current law." They

-16-

suggest only that they seek to "preserve [the claim] for appeal" to the Supreme Court, where

> one currently serving justice views the Due Process Clause as a "curious place" to be a "fount" of rights since it refers to "due process" whereas the Privileges or Immunities clause refers to rights.

(Quoting McDonald v. City of Chicago, 561 U.S. 742, 809-15 (2010) (Thomas, J., concurring)).

Whether or not plaintiffs disagree with current law, this Court is bound to follow it. Hutto v. Davis, 454 U.S. 370, 375 (1982) ("[U]nless we wish anarchy to prevail within the federal judicial system, a precedent of [the Supreme Court] must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be."). This Court will not "jump the gun" by invalidating a centuries-old precedent when a majority of the Supreme Court declined to do so in the very decision cited by plaintiffs:

> For many decades, the question of the rights protected by the Fourteenth Amendment against state infringement has been analyzed under the Due Process Clause of that Amendment and not under the Privileges or Immunities Clause. We therefore decline to disturb the Slaughter-House holding.

McDonald, 561 U.S. at 758.

Plaintiffs are welcome to exercise their right of appeal and try their hand at overturning Slaughter-House, but this judicial officer lacks the pay grade, especially when plaintiffs

provide the Court with no justification to do so beyond the suggestion by some that treating the Due Process Clause as the "fount" of rights is "curious." Id. at 809 (Thomas, J., concurring).

### ORDER

For the foregoing reasons, defendant's motion to dismiss (Docket No. 13) is **ALLOWED**.

**So ordered.**

Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated: March 31, 2025